CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

MARTHA BOERSCH (CABN 126569)
Chief, Criminal Division

GALEN A. PHILLIPS (CABN 307644)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7110
    Email: Galen.Phillips@usdoj.gov

Attorneys for United States of America

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>RAMON FLORES-ESCOTO,<br><br>    Defendant. | Case No. 3:25-CR-00144 JD<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: January 12, 2026<br>Hearing Time: 11:00 a.m.<br>Courtroom:    11, 19th Floor<br><br>Hon. James Donato |

## INTRODUCTION

Defendant Ramon Flores-Escoto stands before the Court to be sentenced following his guilty plea to Counts One and Two of the Information charging him with distributing a mixture or substance containing methamphetamine (Count One) and possession with intent to distribute a mixture or substance containing a detectable amount of fentanyl (Count Two). The government respectfully submits this sentencing memorandum to recommend that the Court sentence Defendant to a term of 36 months' custody, three years of supervised release, forfeiture of $450, and a $200 special assessment.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

    **A.  Criminal History**

Flores-Escoto, a 28-year-old Honduran national in the United States without legal status, has a history of street-level drug dealing, deportation, and illegal reentry. *See* Presentence Investigation

Report ("PSR") ¶¶ 33–44. Flores-Escoto has one prior narcotics-related conviction, for which he was sentenced to 121 days' jail just twelve months ago. *Id.* ¶ 33. He also has narcotics-related arrests from 2020, 2021, and 2024. *Id.* ¶¶ 37–38, 40. Those arrests all occurred in the Tenderloin. *Id.* Flores-Escoto was in violation of stay-away orders during at least two of those arrests. *Id.* And Flores-Escoto apparently did not run from law enforcement during any of those arrests. *Id.*

### B. The Offense Conduct

The government agrees with Probation's description of the offense conduct. *See* PSR ¶¶ 7–15. In short, Ramon Flores-Escoto and his co-defendant, Jose Romero, sold $20 of methamphetamine to an undercover.

When law enforcement converged on the area, Flores-Escoto ran. Flores-Escoto fled northwest on Sixth, pivoted northeast on Market, and then doubled back across Market through traffic. *Id.* ¶¶ 9–11. Law enforcement managed to catch Flores-Escoto on Market. Flores-Escoto's flight injured an officer, who fell in pursuit and suffered a type-3 acromioclavicular joint separation.

Law enforcement searched Flores-Escoto and a bag he discarded while running and uncovered narcotics and $450. PSR ¶¶ 11–13.

### C. Procedural History

Flores-Escoto quickly accepted responsibility for his wrongdoing. The government charged him by complaint on April 30, 2025. PSR ¶ 1. By June, the Parties had reached an agreement in principle concerning the resolution of his case. *See id.* ¶ 2.

## II. GUIDELINES CALCULATION

The Parties and Probation agree concerning the following Guidelines calculation:

| | |
|---|---:|
| Base Offense Level (U.S.S.G. §2D1.1(a)(5)) | 24 |
| Obstruction of Justice (U.S.S.G. §3C1.2) | + 2 |
| Acceptance of Responsibility (U.S.S.G. §3E1.1) | - 3 |
| Adjusted Offense Level | 23 |

Flores-Escoto has a criminal history score of 2, resulting in Criminal History Category II. PSR ¶ 36. Flores-Escoto's Guidelines range is 51 to 63 months' custody. *Id.* ¶ 67.

## III. ARGUMENT

### A. Standard

The overarching goal of a sentencing court is to impose a sentence that is sufficient to "reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed education or vocational training, medical care, or other correctional treatment." *United States v. Ressam*, 679 F.3d 1069, 1088-89 (9th Cir. 2012) (en banc); see United States v. Carty, 520 F.3d 984, 991 (9th Cir. 2008); 18 U.S.C. § 3553(a). The Court should begin the sentencing process by correctly calculating the applicable Guidelines range and must "remain cognizant of them throughout the sentencing process." *Gall v. United States*, 552 U.S. 38, 50 n.6 (2007). The Court should then consider the factors outlined in Section 3553(a) to determine the appropriate sentence. *Ressam*, 679 F.3d at 1089.

The Section 3553(a) factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocations training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established in the Guidelines;

(5) any pertinent policy statement by the Sentencing Commission;

(6) the need to avoid unwarranted disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims.

### B. Government Recommendation

Flores-Escoto's conduct in this case is serious, as is his criminal history which is not adequately depicted by his criminal history category. Both militate in favor of a prison sentence.

While Flores-Escoto has a history of narcotics-related arrests in the Tenderloin, his conduct in this case is uniquely concerning. In the past, Flores-Escoto did not fight arrest. But this time he fled. In

fleeing, Flores-Escoto endangered law enforcement. He may not have intended to hurt anyone by running, but his flight is the proximate cause of a serious injury that hospitalized an officer. This conduct must be penalized to promote both general and specific deterrence.

Flores-Escoto's post-arrest conduct, however, militates against a longer custodial term. He accepted responsibility promptly. Within one month of having been charged, Flores-Escoto had agreed to resolve his case. Flores-Escoto did not contest his detention. Flores-Escoto did not file any pretrial motions. And Flores-Escoto's first appearance before this Court was for a change of plea.

Finally, it is worth noting that Flores-Escoto will be subject to near-certain removal from the United States at the conclusion of his carceral sentence. While removal has not deterred Flores-Escoto in the past, it is an additional consequence of this criminal prosecution worth considering when imposing a sentence.

## CONCLUSION

For these reasons, the government submits that the Court should sentence the Defendant to a term of 36 months in custody, three years of supervised release, forfeiture of $450, and a $200 special assessment.

DATED: December 29, 2025                    Respectfully submitted,

                                            CRAIG H. MISSAKIAN
                                            United States Attorney


                                            /s/
                                            GALEN A. PHILLIPS
                                            Assistant United States Attorney